UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLIAM JAKOB,

                Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.,

                Defendant.

**MEMORANDUM & ORDER**
22-CV-03921 (HG)

**HECTOR GONZALEZ**, United States District Judge:

    Plaintiff William Jakob brings this action, removed from the Supreme Court of the State of New York, County of Suffolk, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, against Defendant JPMorgan Chase Bank, N.A. ("Chase") for: (i) breach of contract; (ii) conversion; and (iii) breach of the implied covenant of good faith and fair dealing. Presently before the Court is Defendant's motion to dismiss the Complaint. ECF Nos. 7, 10, 12. For the reasons set forth below, Defendant's motion to dismiss is granted in part and denied in part.

## **BACKGROUND**[1]

    This case arises from a contractual dispute concerning a bank wire transfer. On November 8, 2021, Plaintiff made an outgoing wire transfer request to Defendant in the amount of $336,247.72 ("Wire Amount") for the purpose of closing a real estate transaction in Florida ("Florida Property"). Amended Complaint, ECF No. 1-2 ¶¶ 8–10. Defendant withdrew the funds from Plaintiff's checking account in order to deposit it into the receiving account, which was also maintained by Chase. *Id.* ¶¶ 11–12. Plaintiff assumed he was sending the Wire

---

[1]     The factual background is derived from the allegations in the Complaint, which the Court accepts as true when considering a motion to dismiss. *See Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 318 n.2 (2d Cir. 2021).

Amount to the seller of the Florida Property. *Id.* ¶ 10.  Shortly after the wire transfer was initiated, however, Plaintiff was notified that the seller had not received the funds.  *Id.* ¶ 14.  Plaintiff immediately attempted to cancel the wire transfer, but was unsuccessful.  *Id.* ¶ 15.  As a result, Plaintiff was unable to purchase the Florida Property.  *Id.* ¶ 18.  Plaintiff alleges that Defendant "has refused to refund the Wire Amount or make the plaintiff whole."  *Id.* ¶¶ 17, 19.  Plaintiff further alleges that Defendant and its agents have refused to cooperate with Plaintiff in his inquiries regarding the Wire Amount.  *Id.* ¶ 20.

On June 9, 2022, Plaintiff filed an amended complaint against Defendant in Suffolk County Supreme Court ("Complaint").  ECF No. 1-2.  On July 5, 2022, Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  ECF No. 1.  On August 9, 2022, Defendant filed its motion to dismiss.  ECF No. 7.  On September 2, 2022, Plaintiff filed its opposition.  ECF No. 10.  On September 12, 2022, Defendant filed its reply.  ECF No. 12.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In resolving a motion to dismiss, "consideration is limited to the factual allegations in plaintiffs' amended complaint, which are accepted as true."  *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).  "However, the court may permissibly consider extrinsic materials where such are incorporated by reference or where a document is one 'upon which the complaint *solely* relies and which is *integral to the complaint.*'"  *Pincover v. J.P. Morgan Chase Bank N.A.*, No. 21-cv-3524, 2022 WL 864246, at

\*4 (S.D.N.Y. Mar. 22, 2022) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)) (emphasis in original). While the Court must draw all reasonable inferences in favor of the non-moving party, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendant argues that Plaintiff's claims fail as a matter of law for the following reasons: (i) applying the terms of Uniform Commercial Code ("UCC") and the parties' Wire Transfer Agreement (defined below), Plaintiff's breach of contract claim fails because the "order to cancel the wire request was received after Chase executed the request," ECF No. 7-3 at 7, and (ii) Plaintiff's conversion and bad faith claims are preempted by the UCC, fail to meet pleading standards and/or are duplicative of Plaintiff's breach of contract claim, *id.* at 11–15.

### I. Extrinsic Materials

Prior to discussing the substance of Defendant's motion, the Court must determine whether both Plaintiff's and Defendant's extrinsic materials are cognizable at this stage of the litigation. In reviewing a motion to dismiss, a court "may consider documents that are attached to the complaint, incorporated in it by reference, integral to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020). "To be incorporated by reference, the complaint must make a clear, definite and substantial reference to the documents . . . [and] [t]o be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *Benny v. City of Long Beach*, No. 20-cv-1908, 2021 WL 4340789, at \*10 (E.D.N.Y. Sept. 23, 2021) (alterations in original). The extrinsic materials here include: (1) the wire transfer outgoing request, which includes the agreement between Plaintiff and Defendant governing the wire

transfer (the "Wire Transfer Agreement"), *see* ECF No. 7-2; (2) an affidavit from Plaintiff containing additional allegations concerning the request for cancellation of the wire transfer (the "Affidavit"), *see* ECF No. 10 at 6–8; and (3) copies of electronic messages exchanged between Plaintiff and Defendant on the day following Plaintiff's request for cancellation of the wire transfer (the "Emails"), *see* ECF No. 10 at 4.

The Wire Transfer Agreement will be considered by the Court because Plaintiff directly referred to it in his Complaint. *See* ECF No. 1-2 ¶¶ 10, 22 ("[T]he plaintiff initiated a wire transfer . . . . [T]he parties entered into a valid and binding express contract to manage and maintain the plaintiff's funds and personal property as described above."); *see also New Image Roller Dome, Inc. v. Travelers Indem. Co.*, 310 F. App'x 431, 432 (2d Cir. 2009) (holding that district court properly considered an agreement referred to in complaint).

The analysis is different, however, for the Affidavit and the Emails. Although the allegations Plaintiff makes in the Affidavit are relevant, these allegations were not included, referenced in, or attached to his Complaint. *Benny*, 2021 WL 4340789, at *10. Accordingly, the Affidavit cannot be deemed to be incorporated by reference, nor is it "integral" to the Complaint. Plaintiff did not rely on the Affidavit to draft his Complaint. *Id.* Instead, the Affidavit was submitted in response to Defendant's motion to dismiss. Thus, the Affidavit and references to it cannot be considered integral to the Complaint and will not be considered by the Court in deciding the instant motion.

While Defendant objects to the use of the Affidavit, *see* ECF No. 12 at 7–9, it does not make a similar objection about the Emails, which consist of two messages between Plaintiff and Defendant sent and received on or around the days following Plaintiff's cancellation request. The Emails were also not included, referenced in, or attached to the Complaint and therefore are

4

not incorporated by reference. *Id.* Plaintiff contends that the Emails are "integral" because he relied on them in framing his Complaint. *See* ECF 10-1 at 7; *see also Melwani v. Lipton*, No. 17-cv-8308, 2019 WL 4572789, at *2 (S.D.N.Y. Sept. 20, 2019) (finding that plaintiff's breach of contract claim was founded in part upon extrinsic emails, therefore those emails were integral, and could be considered in deciding motion to dismiss). Nevertheless, the Court need not reach this issue because it did not need to consider the Emails in deciding the motion.

II. **Defendant's Motion to Dismiss Plaintiff's Breach of Contract Claim Is Denied**

Plaintiff asserts three bases for his breach of contract claim: (i) the Wire Transfer Agreement permitted Plaintiff to cancel the wire transfer, because he made the cancellation request "immediately," ECF No. 1-2 ¶ 15; ECF No. 10-1 at 7; (ii) Plaintiff's request to cancel the wire transfer provided Defendant with a reasonable opportunity to act on the request, because Plaintiff requested the cancellation within 34 minutes of initiating the wire transfer, ECF No. 10-1 at 8–9; and (iii) Plaintiff is entitled to recover the Wire Amount pursuant to N.Y. UCC § 4-A-211 (concerning the recovery of funds transferred by mistake), ECF No. 10-1 at 9–10.

A. *Plaintiff's Claim Is Not Preempted by the UCC*

A threshold issue is whether Articles 4 and 4-A of the UCC preempt Plaintiff's breach of contract claim. Article 4 of the UCC governs bank deposits and collections, *see generally* N.Y. UCC § 4, and Article 4–A "governs the procedures, rights, and liabilities arising out of commercial electronic funds transfers." *Fischer & Mandell LLP v. Citibank, N.A.*, 632 F.3d 793, 797 (2d Cir. 2011); *see also* N.Y. UCC. § 4-A-102. "Article 4–A and Article 4 preclude common law claims that would impose liability inconsistent with the rights and liabilities expressly created by either article." *2006 Frank Calandra, Jr. Irrevocable Tr. v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 236 (S.D.N.Y. 2011). "Both articles, however, recognize the

5

parties' right to define [an] action's disputed contractual terms by agreement." *Fischer & Mandell LLP v. Citibank, N.A.*, No. 09-cv-6916, 2010 WL 2484205, at *4 (S.D.N.Y. May 27, 2010), *aff'd*, 632 F.3d 793 (2d Cir. 2011). In other words, a breach of contract claim is not preempted by Article 4 or Article 4–A "to the extent the [contractual] provisions are not inconsistent" with either article "or they fall within one of the areas where a variance is permitted." *Fischer*, 632 F.3d at 797. Any common law claims concerning the "existence of unauthorized wire transfers," the processing of the wire transfer, or the "mechanics of how [the wire transfer] transactions were conducted" are, however, preempted by the UCC. *2006 Frank Calandra*, 816 F. Supp. 2d at 236; *see also Pedersen v. MidFirst Bank*, 527 F. Supp. 3d 188, 193 (N.D.N.Y. 2021) (finding common law claims concerning processing of wire transfer preempted by UCC). However, to the extent Plaintiff's breach of contract claim is based on Defendant's actions "*before and after* the processing of the wire transfer, such claims are not preempted." *Pedersen*, 527 F. Supp. 3d at 193 (emphasis added) ("Indeed, the UCC does not displace all common law actions based on all activities surrounding funds transfers." (internal quotation marks omitted)). Here, Plaintiff alleges that he asked Defendant to cancel the wire transfer *before* it was processed in accordance with the terms of the Wire Transfer Agreement, *see* ECF No. 10-1 at 8, and, thus, the UCC does not preempt his claim.

> B. Plaintiff Has Sufficiently Alleged That His Cancellation Request Should Have Been Honored Under N.Y. UCC § 4-A-211(2)

N.Y. UCC § 4-A-211(2) states, "a communication by the sender cancelling or amending a payment order is effective to cancel or amend the order if notice of the communication is received at a time and in a manner affording the receiving bank *a reasonable opportunity* to act on the communication *before* the bank *accepts* the payment order." N.Y. UCC § 4-A-211(2) (emphasis added); *see also* N.Y. UCC § 4-A-209(1) ("[A] receiving bank other than the

6

beneficiary's bank accepts a payment order when it executes the order."). Defendant argues that the "critical question for Plaintiff's claim is whether the cancellation request was received by Chase prior to Chase's acceptance and execution of the wire transfer" and maintains that Plaintiff admits the wire transfer was accepted and executed by Defendant before the cancellation order was received. ECF No. 7-3 at 8; ECF No. 1-2 ¶ 13 ("[T]he Wire Amount was released from the plaintiff's account under the exclusive care and control of the defendant CHASE."). Defendant argues that it therefore was under no obligation to honor Plaintiff's cancellation request. ECF No. 7-3 at 9. Plaintiff alleges that he requested a cancellation immediately. *See* ECF No. 1-2 ¶ 15 ("[T]he plaintiff immediately attempted to cancel the wire transfer to no avail.").

If Plaintiff truly requested a cancellation immediately, then his request was arguably received *before* Defendant executed the wire transfer. Since the timing of the wire transfer is a disputed factual issue, the Court cannot decide as a matter of law whether Defendant received Plaintiff's cancellation instructions "at a time and in a manner affording the receiving bank a reasonable opportunity to act on the communication." N.Y. UCC § 4-A-211(2); *see Com. Bank "HansaComBank" v. Republic Nat'l Bank*, No. 97-cv-8636, 1999 WL 64439, at *1 (S.D.N.Y. Feb. 9, 1999) ("A threshold issue in determining whether a bank has been afforded a 'reasonable opportunity' to act on a cancellation request . . . is discerning at what point the institution received 'notice' of the cancellation request. . . . [T]his preliminary inquiry cannot be resolved as a matter of law but rather suggests genuine issues of material fact with respect to exactly when [defendant] received notice of [plaintiff's] request to cancel its original payment orders.").

Plaintiff submitted the wire transfer request at Defendant's Mattituck branch at 4:26 PM. ECF No. 7-2 at 5. Plaintiff alleges that he "immediately" attempted to cancel his wire transfer. ECF No. 1-2 ¶ 15. If true, Plaintiff must have made his cancellation request before 5:00 PM

given the Mattituck branch hours.[2] It is not clear when Defendant executed the wire transfer. If, for example, Defendant executed the wire transfer the following day, Defendant may have had a reasonable amount of time to act on Plaintiff's request. *See Phil & Kathy's v. Safra Nat'l Bank of N.Y.*, 595 F. Supp. 2d 330, 333 (S.D.N.Y. 2009) ("The UCC clearly states that a sender may amend or cancel a payment order prior to acceptance."). Because the Court accepts Plaintiff's factual allegations as true for purposes of the motion to dismiss, the Court finds that N.Y. UCC § 4-A-211 does not provide Defendant with a basis to dismiss Plaintiff's breach of contract claim.[3]

### C. Plaintiff Has Sufficiently Alleged That His Cancellation Request Should Have Been Honored Under the Wire Transfer Agreement

Defendant further argues that Plaintiff's breach of contract claim fails because Defendant's conduct was authorized under the parties' Wire Transfer Agreement. *See* ECF No. 7-3 at 9. Paragraph 3(b) of the Wire Transfer Agreement, which is subject to Article 4–A, addresses cancellation of wire transfer requests and states,

> **(b) Canceling**: You have the right to cancel Consumer International Wire Transfers at no cost to you within 30 minutes after you have authorized us to send it. For all other wire transfers, once you have submitted a wire transfer for the current business day, you cannot cancel it *after we've begun processing*, but you may request us to attempt to return the funds to you. If the *recipient's bank agrees*, your funds may be returned to you, but likely not the full amount that was originally sent. We will not automatically cancel your

---

[2] The Court may take judicial notice of the Mattituck Branch hours, identified in ECF No. 7-2 at 5, because they are public records. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *see Find a Chase ATM or Branch Near You*, CHASE, https://locator.chase.com/ny/mattituck/10300-main-rd (last visited November 8, 2022).

[3] While the Court is unable to dismiss the Complaint at this stage because of the factual dispute concerning when the cancellation request was received by the Defendant vis-à-vis when the wire transfer request was executed, this question seems like one that should be easy to answer in relatively short order during discovery. The Court, therefore, directs the parties to focus on this issue as an initial matter during discovery and invites Defendant to move for summary judgment if the evidence plainly establishes that the cancellation request was received after the wire transfer had been executed.

8

> wire transfer due to the transfer being delayed by more than five business days; if we do cancel your wire transfer we'll notify you.

ECF No. 7-2 at 3 (emphasis added). Defendant explains that "once a wire transfer is submitted and processed, the transaction may not be cancelled unless the recipient bank agrees." ECF No. 7-3 at 10. As discussed previously, whether Defendant processed (meaning, "accepted and executed," *see id.*) Plaintiff's wire transfer before Plaintiff attempted to cancel the wire transfer request is a factual dispute that cannot be resolved at this stage of the proceedings. Accordingly, if Plaintiff's allegations are true, Defendant, as both the beneficiary and recipient bank, could have cancelled the wire transfer request but refused to do so. ECF No. 1-2 ¶ 17. It is therefore not clear that Defendant was within its rights to reject Plaintiff's cancellation request. As such, Plaintiff's breach of contract claim does not fail as a matter of law.

**III.  Defendant's Motion to Dismiss Plaintiff's Conversion Claim Is Granted**

In New York, "conversion is any act of dominion wrongfully exerted over another person's personal property inconsistent with that person's rights in the property." *Cumis Ins. Soc'y, Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1109 (S.D.N.Y. 1996). In order to plead a claim of conversion, a plaintiff must allege that: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *R.B. Dev., Co., Ltd. v. Tutis Cap. LLC*, No. 12-cv-1460, 2013 WL 12358006, at *19 (E.D.N.Y. Sept. 27, 2013) (internal quotation marks omitted). However, "[a] conversion claim may only succeed . . . if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract. Thus, in the context of a dispute regarding a contract, the breach of contract must result in some wrong that is separately actionable, otherwise the conversion claim should be dismissed as duplicative." *Id.*

(citations and internal quotation marks omitted). Plaintiff does not allege separate damages or wrongs related to his conversion claim that are distinct from his breach of contract claim. *See* ECF No. 1-2 at 5–7. Plaintiff's conversion claim is premised on Defendant's alleged breach of contract for failing to cancel the wire transfer and return the Wire Amount to Plaintiff. *Id.* ¶ 27. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's conversion claim as duplicative of the breach of contract claim.

Moreover, even if Plaintiff's conversion claim was not duplicative, it fails as a matter of law because Plaintiff's allegations concerning the funds transferred to the receiving account are not sufficiently "specific" and "identifiable." *See Acevado v. Citibank, N.A.*, No. 10-cv-8030, 2012 WL 996902, at *11 (S.D.N.Y. Mar. 23, 2012) ("In a conversion action, Plaintiffs must . . . demonstrate that the property in question is a specific, identifiable thing." (internal quotation marks omitted)). "New York courts have held that '[a] checking account, which does no more than create a debtor-creditor relationship, does not satisfy that requirement and cannot be converted.'" *Id.* (alteration in original); *see also Fundacion Museo de Arte Contemporaneo de Caracas v. CBI–TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir. 1998) ("[F]unds deposited in a bank account are not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank."); *Geler v. Nat'l Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y. 1991) ("[T]he money deposited in a bank account is not sufficiently specific and identifiable, in relation to the bank's other funds, to support a claim for conversion against the bank."). Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's conversion claim on the basis that Plaintiff cannot sufficiently identify with specificity the funds to support a claim for conversion.

### IV. Defendant's Motion to Dismiss Plaintiff's Bad Faith Claim Is Granted

Although Plaintiff's third cause of action is titled "Bad Faith," Plaintiff seemingly puts forth a claim for breach of the implied covenant of good faith and fair dealing. ECF No. 1-2 at 6. Plaintiff alleges that Defendant owed it a duty "to discharge its obligations under the contract in good faith and to deal with the plaintiff fairly." *Id.* ¶ 34. Plaintiff further alleges that Defendant "breached said implied covenant of good faith and fair dealing by engaging in a course of conduct designed to ensure that the plaintiff would not immediately recover his funds and recoup possession of the Wire Amount the defendant misappropriated." *Id.* ¶ 35. "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *GEICO Marine Ins. Co. v. Mandel*, No. 19-cv-3107, 2020 WL 6318948, at *10 (E.D.N.Y. Sept. 18, 2020) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)). "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *GEICO Marine Ins.*, 2020 WL 6318948, at *10 (citation omitted). Plaintiff's claim is premised on Defendant's alleged breach of contract for failing to cancel the wire transfer and return the Wire Amount to Plaintiff. ECF No. 1-2 ¶¶ 32–37. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing as duplicative of the breach of contract claim.

In the event Plaintiff intended to instead assert a claim of commercial bad faith, this claim likewise fails. "[T]o state a claim for commercial bad faith against a bank, a plaintiff must allege: (1) a scheme or acts of wrongdoing; together with either: (2) allegations of the bank's actual knowledge of the scheme or wrongdoing that amounts to bad faith; or (3) allegations of

11

complicity by bank principals in alleged confederation with the wrongdoers. The New York Court of Appeals has explained that commercial bad faith is alleged when a 'bank acts dishonestly—where it has actual knowledge of facts and circumstances that amount to bad faith, thus itself becoming a participant in the fraudulent scheme.'" *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 145 (S.D.N.Y. 2010) (citations and internal quotation marks omitted) (alteration in original). Plaintiff implicitly alleges that Defendant acted in bad faith by breaching "the agreement to safely and carefully manage the plaintiff's funds through no fault of the plaintiff and without lawful justification." ECF No. 1-2 ¶ 25. Plaintiff's claim rests solely on Defendant's alleged refusal to cancel the wire transfer and return the Wire Amount to Plaintiff and does not include any allegations that Defendant was complicit in any fraud. *See Nigerian Nat'l Petroleum Corp. v. Citibank, N.A.*, No. 98-cv-4960, 1999 WL 558141, at *7 (S.D.N.Y. July 30, 1999) (dismissing bad faith claim where plaintiff failed to allege bank had any motive to assist in perpetrating fraud and finding allegations that bank disregarded suspicious circumstances insufficient to state a claim).

Moreover, claims for commercial bad faith are subject to the heightened pleading requirements of Rule 9(b) which requires that the "circumstances of the alleged fraud" be alleged with particularity. *MLSMK Inv. Co.*, 737 F. Supp. 2d. at 145. Plaintiff has not pled sufficient facts to support "a strong inference of fraudulent intent." *Nigerian Nat'l Petroleum Corp.*, 1999 WL 558141, at *7. To the contrary, Plaintiff alleges that he initiated the wire transfer after receiving an email from what he believed to be the title company for the Florida Property and that "[t]o his surprise, the title company . . . responded that they never sent such request." ECF No. 10-1 at 4. Like Plaintiff, Defendant had no reason to know or suspect fraud. Accordingly, the Court finds that Plaintiff fails to state a claim for commercial bad faith.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Complaint is granted in part and denied part.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       November 8, 2022