UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

WILLIAM JAKOB,
                Plaintiff,

v.

JPMORGAN CHASE BANK, N.A. and
EXCEEDING GRACE ENTERPRISES,
LLC.,
                Defendants.

**MEMORANDUM & ORDER**
22-CV-3921 (HG)

**HECTOR GONZALEZ**, United States District Judge:

      Plaintiff William Jakob brings this action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, against Defendants JPMorgan Chase Bank, N.A. ("Chase") and Exceeding Grace Enterprises, LLC ("Exceeding Grace") for breach of contract, unjust enrichment, fraud, fraud in the inducement, promissory estoppel, civil conspiracy, and conversion. ECF No. 17 (Second Amended Complaint).

      Presently before the Court is Defendant Exceeding Grace's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3). For the reasons set forth below, Defendant Exceeding Grace's motion to dismiss is denied.

## BACKGROUND

      The Court assumes familiarity with the facts and history of this litigation and only provides a summary of the pertinent facts and procedural history. *See Jakob v. JPMorgan Chase Bank, N.A.*, No. 22-cv-3921, 2022 WL 16798071 (E.D.N.Y. Nov. 8, 2022).

      This case arises from a contractual dispute concerning a bank wire transfer. On November 8, 2021, Plaintiff made an outgoing wire transfer request to Chase in the amount of $336,247.72 ("Wire Amount") for the purpose of closing a real estate transaction in Florida ("Florida Property"). Second Amended Complaint, ECF No. 17 ¶¶ 16–17, 23. Chase withdrew

the funds from Plaintiff's checking account in order to deposit it into the receiving account, which was also maintained at Chase. *Id.* ¶¶ 25. Plaintiff assumed he was sending the Wire Amount to the seller of the Florida Property. *Id.* ¶ 23. Plaintiff alleges, however, that "while in the process of negotiating the Florida purchase," Defendant Exceeding Grace "fraudulently, improperly and/or without authority masqueraded as" both the employee of the real estate company and an employee of the title agency Plaintiff was using for the purchase of the Florida Property. *Id.* ¶¶ 18–19, 21. Plaintiff further alleges that Defendant Exceeding Grace "engaged in email exchanges with the [P]laintiff with the intent to improperly extract money" and requested that the Wire Amount be sent to its Chase account. *Id.* ¶ 20.

Shortly after the wire transfer was initiated, Plaintiff was notified that the seller had not received the funds. *Id.* ¶ 26. Plaintiff immediately attempted to cancel the wire transfer, but was unsuccessful. *Id.* ¶¶ 27–28. As a result, Plaintiff was unable to purchase the Florida Property. *Id.* ¶ 30. Plaintiff alleges that Chase and Defendant Exceeding Grace "had [or have] no lawful authority, license or permission to retain or continue to retain [P]laintiff's Wire Amount." *Id.* ¶¶ 31–32.

On November 16, 2022, Plaintiff filed a second amended complaint naming Exceeding Grace as a defendant and asserting additional claims against it. ECF No. 17. On January 20, 2023, Defendant Exceeding Grace filed a motion to dismiss for lack of personal jurisdiction. ECF No. 24-1. On February 21, 2023, Plaintiff filed its opposition. ECF No. 27.

## **LEGAL STANDARD**

A motion to dismiss for lack of personal jurisdiction is reviewed under the same legal standard as a motion to dismiss for improper venue. *Precision Wellness LLC v. Demetech Corp.*,

No. 21-cv-1244, 2022 WL 970773, at *2 (E.D.N.Y. Mar. 30, 2022).[1] In both circumstances, the plaintiff bears the burden of demonstrating that venue and jurisdiction are proper. *Id*. The Court "may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials." *Id.* at *3.

"The showing a plaintiff must make to meet this burden is governed by a sliding scale, which varies depending on the procedural posture of the litigation." *Id.* at *2. "Absent a full-blown evidentiary hearing," plaintiff "need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *DeLorenzo v. Ricketts & Assocs., Ltd.*, No. 15-cv-2506, 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017). At the motion to dismiss stage, "although pleadings and affidavits are construed in the light most favorable to the plaintiff, conclusory non-fact-specific jurisdictional allegations or a legal conclusion couched as a factual allegation will not establish a prima facie showing of jurisdiction." *Id.* "The allegations in the complaint are presumed true only to the extent they are uncontroverted by the defendant's affidavits." *Precision*, 2022 WL 970773, at *3.

## DISCUSSION

In determining whether there is personal jurisdiction over a defendant, the Court must first look to state law—in this case, New York law. *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located."). After first determining whether New York's long-arm statute permits the Court's exercise of personal jurisdiction over Defendant Exceeding Grace, the Court must next decide whether that exercise of jurisdiction is permissible under the Due Process Clause of the

---

[1] Unless noted, case law quotations in this Order accept all alterations and omit all internal quotation marks, citations, and footnotes.

Fourteenth Amendment. *Id*. For the reasons set forth below, the Court denies the motion and finds that it may exercise personal jurisdiction over Defendant Exceeding Grace.

**I.      The Court May Exercise Specific Jurisdiction Over Defendant Exceeding Grace**

"There are two types of personal jurisdiction: specific and general." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225 (2d Cir. 2014). Plaintiff does not allege that Defendant is subject to general jurisdiction in New York. Accordingly, the Court limits its discussion to whether Defendant is subject to specific jurisdiction pursuant to sections 302(a)(1) and 302(a)(3)(ii) of the New York Civil Practice Law & Rules ("CPLR").[2]

Section 302(a) of the CPLR "permits courts to exercise personal jurisdiction over a non-domiciliary where the cause of action arises from any of the acts enumerated in the statute." *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 333 (E.D.N.Y. 2021). CPLR § 302(a) specifically provides that:

> [a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary. . . who in person or through an agent:
>     1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . .
>     3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he . . .
>         (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

CPLR § 302(a).

Plaintiff argues that personal jurisdiction over Defendant Exceeding Grace exists

---

[2]      Plaintiff does not reference any specific section of the CPLR in his second amended complaint but specifically references sections 302(a)(1) and 302(a)(3)(ii) of the CPLR in his opposition. ECF No. 27 at 3. Accordingly, the Court will consider whether Defendant is subject to personal jurisdiction pursuant to these sections.

4

pursuant to sections 302 (a)(1) and (a)(3)(ii) of the CPLR because the second amended complaint "pleads contractual and tortious claims against Defendant [Exceeding Grace]." ECF No. 27 at 3. Defendant contends that exercising personal jurisdiction over it "violate[s] traditional notions of fair play and substantial justice" because it has no minimum contacts with New York. ECF No. 24-1 at 2.

> A. *The Court May Exercise Personal Jurisdiction Over Defendant Exceeding Grace Pursuant to CPLR § 302(a)(1)*

"Section 302(a)(1) has two prongs: (1) the defendant must have transacted business within the state, either itself or through an agent, and (2) the cause of action must arise from that business activity. . . . In determining whether a defendant is purposefully transacting business in New York, a court must look at the quality of the defendant's New York contacts." *Grp. One Ltd.*, 523 F. Supp. 3d at 335. Defendant Exceeding Grace's lack of physical presence in New York "is not dispositive of whether [it] transacts business within the state, so long as [its] activities within the state were purposeful and there is a substantial relationship between the transaction and the claim asserted" by Plaintiff. *Id.* Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged that Defendant Exceeding Grace transacted business in New York within the meaning of Section 302(a)(1).

> A defendant's purposeful creation of a continuing business relationship with a New York party grants New York courts personal jurisdiction. This is true even when a defendant never physically enters the state, because the growth of the national market and technological advances in communication enable a party to transact enormous volumes of business within a state without physically entering it. A defendant's communications with a New York resident suffice to establish personal jurisdiction if the defendant projected himself into some transaction with a center of gravity inside New York.

*Kalaj v. Kay*, No. 21-cv-4395, 2023 WL 4564795, at *3 (E.D.N.Y. July 17, 2023). In identifying the "center of gravity," New York courts "may consider a spectrum of significant contacts,

5

including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 135 (2d Cir. 2018). Here, Plaintiff, a New York citizen, alleges that while in the process of negotiating the purchase of a property, Defendant Exceeding Grace "fraudulently, improperly and/or without authority masqueraded as an employee" of a real estate company, posed as a title agent, and "engaged in email exchanges with the [P]laintiff with the intent to improperly extract money." ECF No. 17 ¶¶ 18–21.

Defendant Exceeding Grace allegedly communicated with a New York citizen in negotiating the purchase of property. While the property itself is located in Florida, one of the contracting parties is located in New York and the negotiation and performance of the purchase, which included purposeful communications—albeit electronic—also occurred in New York. Such activities are sufficient for this Court to exercise personal jurisdiction over Defendant. "That . . . communications [are] predominantly electronic does not change the result; a long line of New York precedent upholds the exercise of personal jurisdiction based on remote but purposeful contact." *Hart v. Tri-State Consumer, Inc.*, No. 21-cv-1738, 2021 WL 5180923, at *5 (S.D.N.Y. Nov. 6, 2021) (finding personal jurisdiction over defendant who repeatedly and purposefully communicated with plaintiff via email). Defendant Exceeding Grace does not dispute communicating with Plaintiff regarding the transaction, but instead contends that "this is a tragic situation where both the Plaintiff and Exceeding Grace were victims of a sophisticated scammer." ECF No. 24-2 at 1–2. Accordingly, in the absence of contradictory information and in light of the Court's obligation to construe the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a prima facie showing that this Court has personal jurisdiction over Defendant Exceeding Grace pursuant to section 302(a)(1) of the CPLR. *Precision*, 2022

WL 970773, at *3.

### B. The Court May Exercise Personal Jurisdiction Over Defendant Exceeding Grace Pursuant to CPLR § 302(a)(3)(ii)

The New York Court of Appeals has established five elements that must be satisfied to establish specific jurisdiction under section 302(a)(3)(ii) of the CPLR: (1) the defendant must have committed a tortious act outside of New York; (2) the cause of action at issue must have arisen as a result of this act; (3) this act must have caused an injury to a person or property in New York; (4) the defendant expected or should have reasonably expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from either interstate or international commerce. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (N.Y. 2011); *see also Mednik v. Specialized Loan Servicing, LLC*, No. 20-cv-427, 2021 WL 707285, at *7 (E.D.N.Y. Feb. 23, 2021) (applying *Penguin* test). The Court concludes that Plaintiff's allegations are sufficient to provide for this Court's exercise of personal jurisdiction pursuant to section 302(a)(3)(ii) of the CPLR.

With respect to the first and second elements—that the Defendant committed a tortious act outside of New York resulting in Plaintiff's causes of action—Plaintiff alleges that Defendant Exceeding Grace "fraudulently, improperly and/or without authority masqueraded as an employee" of a real estate company, "posed as the title agent and requested payment" of the Wire Amount and "engaged in email exchanges with the [P]laintiff with the intent to improperly extract money." ECF No. 17 ¶¶ 18–21. Plaintiff asserts several tort claims against Defendant Exceeding Grace including, among other things, fraud, fraud in the inducement, and conversion. *Id.* ¶¶ 51–61, 73–77. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has sufficiently alleged that Defendant Exceeding Grace committed tortious acts outside of New York.
7

In satisfaction of the third element of the *Penguin* test—whether Defendant Exceeding Grace's alleged tortious acts caused an injury to Plaintiff in New York—Plaintiff alleges that he initiated a wire transfer from New York as a result of Defendant Exceeding Grace's misrepresentations, that he is entitled to damages because he was unable to purchase the Florida Property, and that Defendant Exceeding Grace continues to unlawfully retain the Wire Amount. ECF No. 17 ¶¶ 30–34. Such allegations are sufficient to make a prima facie showing that Defendant Exceeding Grace's alleged tortious acts caused injury to Plaintiff in New York. *Penguin*, 16 N.Y.3d at 302. "[C]ourts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury. . . . Courts examining cases involving misrepresentations have, in fact, often found that the situs of injury is New York when the original reliance or other first event causing the injury occurs in New York, even if the defendant has never sent any misrepresentations into the state." *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791–92 (2d Cir. 1999) (holding that the disbursement of funds was the first effect of the tort that caused plaintiff's injury in satisfaction of the "situs-of-injury" test). As a result of Defendant Exceeding Grace's misrepresentations, Plaintiff initiated a wire transfer in New York, using his New York bank account. ECF No. 17 ¶¶ 18–28. Accordingly, the disbursement of Plaintiff's funds "was the original event that caused the injury" and as such, there is injury in New York sufficient to warrant section 302(a)(3) jurisdiction. *Id.* at 791; *see also Fica Frio, Ltd. v. Seinfeld*, 434 F. Supp. 3d 80, 91 (S.D.N.Y. 2020) (holding that plaintiff made a prima facie showing of direct injury in New York because plaintiff disbursed funds in reliance on misrepresentations); *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 987, 900 (2d Cir. 1980) ("One immediate and direct injury [defendant's] alleged tortious

misrepresentations caused to plaintiffs was the loss of the money paid by them for the diseased vines. That injury was immediately felt in New York where plaintiffs were domiciled and doing business, where they were located when they received the misrepresentations, and where the vines were to be shipped.").

With respect to the fourth element, Plaintiff's allegations that Defendant Exceeding Grace forwarded emails to Plaintiff "with the intent for plaintiff to materially rely upon said information, requesting the funds be sent by electronic wire transfer to defendant" are sufficient to suggest that Defendant Exceeding Grace expected or should have reasonably expected its alleged misrepresentations to have consequences in New York. "The [fourth] element is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." *LaMarca v. Pak-More Mfg. Co.*, 735 N.E.2d. 883, 886 (N.Y. 2000). By allegedly masquerading as both an employee of the real estate company and an employee of the title agency used in the purchase of the Florida Property, and requesting that Plaintiff initiate a wire transfer from his New York bank account, Defendant Exceeding Grace engaged in conduct it should have known would have consequences in New York. *Id.* at 886–87 (finding that the fourth element is met when "the nonresident tortfeasor expects, or has reason to expect, that his or her tortious activity in another State will have direct consequences in New York").

Finally, with respect to the fifth element, the Court finds that Plaintiff has sufficiently alleged that Defendant Exceeding Grace derived substantial revenue from interstate commerce in light of the allegations that Exceeding Grace received and retained the Wire Amount. "[The substantial revenue] requirement is designed to narrow the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within

9

the State but whose business operations are of a local character.  Revenue may be deemed substantial where the amount of the revenue the defendant derives from interstate/international commerce is great, even though it comprises only a small portion of the defendant's overall business." *Fica Frio*, 434 F. Supp. 3d at 92.  Defendant Exceeding Grace allegedly knowingly participated in a real estate transaction with a New York citizen where it expected to derive revenue disbursed from a New York bank account, at a minimum in the amount of $336,247.72. In the context of a real estate transaction involving multiple forums, a sum of over $300,000 is arguably a substantial amount derived from interstate commerce.  In light of its participation in a real estate transaction for the purchase of the Florida Property, Defendant Exceeding Grace should expect that it would have to defend a potential lawsuit in a foreign forum.[3]  *See Ikeda v. J. Sisters 57, Inc.,* No. 14-cv-3570, 2015 WL 4096255, at *5 (S.D.N.Y. July 6, 2015) ("No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.").

      Accordingly, in light of the Court's obligation to construe the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a prima facie showing that this Court has personal jurisdiction over Defendant Exceeding Grace pursuant to section 302(a)(3)(ii) of the CPLR.

---

[3] In a declaration filed in support of Defendant Exceeding Grace's motion, its managing member states that "[a] scammer led [her] to believe he was engaging in a legitimate business transaction and *asked to work with* [Exceeding Grace]." ECF No. 24-2 at 2 (emphasis added). This suggests that Defendant Exceeding Grace is in the real estate business and further supports the Court's conclusion that Defendant Exceeding Grace should expect that it would have to defend a potential lawsuit in a foreign forum.

10

## II. The Court's Exercise of Personal Jurisdiction Over Defendant Exceeding Grace Comports with Due Process

The only remaining issue is whether the exercise of personal jurisdiction violates Defendant Exceeding Grace's due process rights. "There are two components to the due process analysis undertaken to determine whether [a defendant] is subject to the court's jurisdiction for commercial activity involving the State of New York: (1) the minimum contacts inquiry, and (2) the reasonableness inquiry." *Carson Optical*, 2020 WL 1516394, at *6.

"As to due process requirements, [s]ection 302(a) of the New York long-arm statute complies with the Due Process Clause because it limits jurisdiction to those causes of action that arise out of activity conducted within the state. Thus, the finding that jurisdiction is proper under the New York long-arm statute satisfies any due process concerns." *Universal Ent. Events, Inc. v. Classic Air Charter, Inc.*, No. 15-cv-1104, 2016 WL 3064089, at *3 (E.D.N.Y. May 31, 2016); *see also Chatwal Hotels & Resorts LLC v. Dollywood Co.*, 90 F. Supp. 3d 97, 108 (S.D.N.Y. 2015) ("Because the New York long-arm statute is more restrictive than the federal due process requirements, by virtue of satisfying the long-arm statute the minimum contacts and reasonableness requirements of due process have similarly been met."). Thus, in finding that Plaintiff has made a prima facie showing that this Court has personal jurisdiction over Defendant Exceeding Grace pursuant to sections 302(a)(1) and 302(a)(3)(ii) of the CPLR, the Court finds that the minimum contacts and reasonableness requirements of due process have been met. *See Hart*, 2021 WL 51880923, at *7 (finding that exercising personal jurisdiction does not run afoul of due process where defendants "purposefully conducted business with a New York resident" including by electronic correspondence).

Moreover, "New York has a strong interest in vindicating the rights of its citizens, and Plaintiff has a strong interest in obtaining relief here. . . . Considering that [Defendant Exceeding

11

Grace's] long business arm extended to New York, it seems only fair to extend correspondingly the reach of New York's jurisdictional long-arm; and exercising jurisdiction in New York would not offend traditional notions of fair play and substantial justice." *Hart*, 2021 WL 51880923, at *7.

## CONCLUSION

For the reasons stated above, Defendant Exceeding Grace's motion to dismiss is DENIED.

SO ORDERED.

                                          */s/ Hector Gonzalez*
                                           HECTOR GONZALEZ
                                           United States District Judge

Dated: Brooklyn, New York
        August 19, 2023